

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

In Re:                                    )
                                          )
HENRY DEAN FINCH,                         )      Case No. 303-12952
        Debtor.                           )      Chapter 7
                                          )      Honorable Keith M. Lundin
                                          )
ROBERT H. WALDSCHMIDT, Trustee            )
        Plaintiff                         )
                                          )
v.                                        )
                                          )
HENRY DEAN FINCH                          )
        Defendant/Third-Party             )
        Plaintiff                         )
                                          )
                                          )
v.                                        )      Adversary Number: 303-0918A
                                          )
VINCENT GOULD, SHANNON GOULD,             )
AND WE THE PEOPLE                         )
        Third-Party Defendants.           )

---

MICHAEL SCOTT TOALSON,                    )
        Debtor.                           )      Case No. 303-12945
                                          )      Chapter 7
                                          )      Honorable George C. Paine, II
                                          )
                                          )
ROBERT H. WALDSCHMIDT, Trustee            )
        Plaintiff                         )
                                          )
v.                                        )
                                          )
MICHAEL SCOTT TOALSON                     )
        Defendant/Third-Party             )
        Plaintiff                         )
                                          )
                                          )
v.                                        )      Adversary Number: 303-0916A
                                          )
VINCENT GOULD, SHANNON GOULD,             )
AND WE THE PEOPLE                         )
        Third-Party Defendants.           )

LINDA MARIE SMITH,
      Debtor.                                   )   Case No. 303-13537
                                               )   Chapter 7
                                               )   Honorable George C. Paine, II
                                               )
                                               )
ROBERT H. WALDSCHMIDT, Trustee                 )
      Plaintiff                                )
                                               )
v.                                             )
                                               )
LINDA MARIE SMITH                              )
      Defendant/Third-Party                    )
      Plaintiff                                )
                                               )
v.                                             )   Adversary Number: 303-0915A
                                               )
VINCENT GOULD, SHANNON GOULD,                  )
AND WE THE PEOPLE                              )
      Third-Party Defendants.                  )

---

ANTOINETTE INMON,
      Debtor.                                   )   Case No. 303-09111
                                               )   Chapter 7
                                               )   Honorable Marian F. Harrison
                                               )
RICHARD F. CLIPPARD, UNITED                    )
STATES TRUSTEE,                                )
      Plaintiff                                )
                                               )
v.                                             )   Adversary Number: 303-0475A
                                               )
VINCENT GOULD, D/B/A WE THE                    )
PEOPLE FORMS AND SERVICE                       )
CENTER OF NASHVILLE, WE THE                    )
PEOPLE FORMS AND SERVICE                       )
CENTERS USA, INC., AND JOHN                    )
DAVID MOORE,                                   )
      Defendants.                              )

---

## MEMORANDUM

The matters before the court include: (1) three 11 U.S.C. § 727 actions brought

by Chapter 7 Trustee, Robert H. Waldschmidt (hereinafter "trustee") against three

individual debtors, Henry David Finch (03-0918A), Michael Scott Toalson (03-0916A), and Linda Marie Smith (03-0915A); (2) third party complaints brought by each of the three debtors against Vincent and Shannon Gould and We the People Nashville (hereinafter "the Goulds" and "WTP") alleging negligence, breach of contract, and violations of 11 U.S.C. § 110; and (3) the United States Trustee's (hereinafter "UST") action against Vincent Gould, WTP Nashville, WTP USA, Inc., and John David Moore alleging multiple violations of 11 U.S.C. § 110. The court first addresses the discharge actions, and then the third party complaints, and finally the UST's action. The following constitutes the court's findings of fact and conclusions of law. *Fed.R.Bankr.P. 7052.*

## I. Overall Procedural Background of All Matters

All of the debtors involved in these matters consulted WTP to prepare bankruptcy petitions. In each case, chapter 7 petitions were filed, and Vincent Gould was listed as the petition preparer. In all cases, Robert H. Waldschmidt was appointed as Chapter 7 Trustee. The trustee found inaccuracies and omissions in the Statements and Schedules of the debtors in *Finch, Toalson,* and *Smith.* Accordingly, the trustee filed dischargeability actions pursuant to 11 U.S.C. § 727 seeking to deny the debtors' discharges for omitting or providing inaccurate information on their petitions, Statements, and Schedules.

Each of these debtors filed their petitions *pro se,* but following the dischargeability complaints filed by the chapter 7 trustee, each debtor retained counsel to defend the adversary proceedings. In all three cases, the debtors filed third-party actions against Vincent and Shannon Gould and WTP alleging that the negligence, breach of contract, and/or violations of 11 U.S.C. § 110 lead to the omissions and inaccuracies in their bankruptcy filings. Accordingly, in the *Finch, Toalson,* and *Smith* cases, the debtors seek a judgment over Vincent and Shannon Gould and WTP.

Also around this same time, the United States Trustee filed a separate adversary proceeding seeking damages and injunctive relief in the *Inmon* case for alleged violations of 11 U.S.C. § 110. After brief proceedings before Judge Harrison, the *Inmon* case was consolidated for trial with *Finch, Toalson,* and *Smith.* All matters were then put on the same discovery schedule and set for trial. After a full day of trial on July 28, 2004, the proof remained open, and the parties agreed upon September 22, 2004 to conclude the proof. At that time, the court took the matter under advisement.

## II. The 11 U.S.C. § 727 Dischargeability Actions

### A. The Facts of Each Case

#### 1. Henry David Finch

Harry David Finch is a former contractor who is in the process of obtaining disability. His wife died in 2001, and he has had no steady income since that time. He has a 10th grade education and difficulty reading. The debtor had been on medication for his multiple medical problems for more than two years prior to filing bankruptcy. He contacted WTP after his friend, Felicia Stevens, saw their advertisement on a bus stop. Stevens testified that she told Finch that WTP advertised bankruptcy filings for $199. Finch remembered WTP's phone number as having "LEGAL" in the number and contacted them. At his WTP meeting, he signed a "Contract for Services" provided by WTP, received information about bankruptcy, and received a "workbook" to fill out and return to WTP.

Finch testified that a WTP employee named Sandy or Cindy told him that they would file everything, and that he thought WTP was representing him. When Finch got to a question asking about real property, he explained to Sandy/Cindy that he had owned some real property, but had sold it and gotten some money for it. The debtor

4-U.S. Bankruptcy Court, M.D. Tenn.

testified that Cindy/Sandy told him that he did not have to list the property.

Finch's friend, Felicia Stevens, helped Finch finish filling out the workbook at his house. She testified that when they got to the question concerning ownership of real property, the question had been marked through. Stevens thought maybe it should have been filled out, and she testified that she heard the debtor call WTP to confirm that the question should be blank. Although she did not hear the entire conversation, she heard Finch call WTP, and Finch then told her that WTP said it should be left blank. The debtor left the real property question blank, and it was left blank on the bankruptcy petition that WTP filed. The debtor paid WTP $199 for their services, and another $199 for the filing fee.

WTP filed the debtor's voluntary petition under Chapter 7 of the Bankruptcy Code on October 9, 2003. The debtor signed his petition, Statements, and Schedules indicating that the information contained therein was correct. However, at the 11 U.S.C. § 341 Meeting of Creditors, when asked by the trustee, the debtor indicated that he had owned and sold property located at 1066 Chestnut Road, Ashland City prior to filing. Finch indicated he received $15,000.00 from the sale. Upon request of the trustee, the debtor provided bank records showing that the debtor used the money to pay bills from January 2003 until July 2003. The property had not been disclosed in the debtor's Statements and Schedules because Finch had relied on WTP's advice to leave the question blank.

The trustee told the debtor after his Meeting of Creditors that he might need to consult an attorney because of the omissions in the Statements and Schedules. The debtor hired an attorney after the trustee filed a § 727 action against him seeking to deny his discharge. The debtor's attorney then helped him amend his Statements and

Schedules to include the property transfer and a pending consumer protection lawsuit that the debtor had brought against Nissan. The debtor testified that he would have told the trustee about the lawsuit if he had been asked about it at the Meeting of Creditors, and he did not know he should have listed it until consulting his attorney.

The trustee's dischargeability action seeks to deny the debtor's discharge based on the omission of the property transfer and the omission of the lawsuit. The debtor counters that the property transfer was not listed based on advice given by WTP, and that he did not know to list the pending lawsuit until meeting with an attorney. No money is or was remaining from the sale of the property as of the filing of bankruptcy or the Meeting of Creditors.

### 2. Michael Scott Toalson[1]

Michael Scott Toalson has not worked for several years except for a few months in the summer of 2003. He testified that he is disabled due to health issues including cardiovascular problems, back troubles, and foot problems. In 1999, he lived in Fulton, Kentucky on his late parents' property he owned jointly with his brother and sister. He and his brother took out a loan to buy out his sister's 1/3 interest, and Toalson lived in the Fulton, Kentucky home until it was sold in November of 2002 for $45,000. He and his brother divided the sale proceeds evenly after repaying the loan.

Toalson used the sale proceeds to pay living expenses. Although the debtor had receipts documenting some of the expenses paid, he could not account for every dollar

---

[1]Counsel for Mr. Toalson filed a Notice of Death for Mr. Toalson shortly after he testified at the hearing. Mr. Toalson's death does not abate the liquidation of this case under chapter 7. Mr. Toalson's bankruptcy estate is administered and concluded in the same manner, so far as possible, as though the death did not occur. *Fed.R.Bankr.P. 1016.*

received from the sale proceeds. Toalson's testimony was credible, however, that all of the proceeds had been expended on reasonable living expenses. When he was down to his final $200, he decided to file bankruptcy.

Toalson explained that he saw WTP's advertisement in a "Sensible Shopper" flyer stating that if he called "44-LEGAL," he could file bankruptcy for $200. He called WTP and spoke to Cindy and made an appointment. At the first meeting, he met with Cindy for about 10-15 minutes. She gave him a packet of information containing informational brochures about bankruptcy, a WTP Contract for Services, and a bankruptcy "workbook." Toalson testified that Cindy went through some of the workbook highlights, but that Shannon Gould took over when he needed help with Question 10 asking about real property. Toalson explained that Shannon Gould marked through questions that did not pertain to him. Question 10 of the workbook asked:

> List all other property other than property transferred in the ordinary course of business or financial affairs of the debtor, transferred either absolutely or as security during the past year to creditor or family member.

Toalson stated that Mrs. Gould told him that because he did not transfer the Fulton, Kentucky property to a creditor or family member, he did not have to list the transfer. This advice was given after Mrs. Gould consulted with Mr. Vincent Gould, who in turn referenced a book source and confirmed the omission.

Once the debtor got home and worked more on the workbook, his brother recommended that he call WTP to confirm that the Kentucky property transfer did not need to be disclosed. Toalson's brother testified that the debtor called WTP. Toalson then testified that Mr. Gould reiterated that there was no problem in omitting the transfer.

The debtor returned to WTP to sign his petition, Statements and Schedules and on October 7, 2003 paid an additional $215 to Mr. Gould to cover the filing fee and copy fee. He was told where to sign, and was not offered an opportunity to compare his workbook with his finalized papers. In fact, under questioning by the UST, the debtor identified several instances where WTP had made changes, such as: (1) WTP marked out questions; (2) WTP inserted corrections without the debtor's permissions; (3) WTP added information without asking the debtor; (4) WTP suggested to Toalson to include such things as exemption statutes; (5) WTP recommended assigning a "yard sale" value for personal property and exemptions, and (6) WTP "helped" with whether a claim was priority, secured or unsecured.

WTP filed the debtor's voluntary petition under Chapter 7 of the Bankruptcy Code on October 22, 2003. The debtor signed his petition, Statements and Schedules indicating that the information contained therein was correct. However, the debtor disclosed at his Meeting of Creditors, when asked by the trustee, that he had sold his parents' house seven months prior to filing. The property had not been disclosed in the debtor's Statements and Schedules because Toalson had relied on WTP's advice to leave the question blank.[2]

The trustee told the debtor after his Meeting of Creditors that he might need to consult an attorney because of the omissions in the Statements and Schedules. The debtor returned to WTP with his brother. Toalson testified that Mr. Gould told him that he could do an amendment for $30, and when Toalson stated he had no money, Mr. Gould said he would take care of it, but Toalson never heard from WTP again.

---

[2] The testimony of Mr. Toalson's brother was completely consistent with the debtor's concerning the amount of the sale proceeds, the debtor's health issues, and the debtor's use of the sale proceeds to pay creditors and living expenses.

When the trustee did file a § 727 action, Toalson again contacted WTP, and they gave him the number of an attorney named Todd Faulkner. Faulkner told Toalson that the bankruptcy had "gone into extra innings," and he could not represent him. After trying another attorney, he finally obtained help at legal services to represent him. He then filed Amended Statements and Schedules that included the property transfer, and a wrecked car that had not originally been listed.

The trustee's dischargeability action seeks to deny the debtor's discharge based on the omission of the property transfer. The debtor counters that the property transfer was not listed based on advice given by WTP. No money is or was remaining from the sale of the property as of the filing of bankruptcy or as of the Meeting of Creditors.

### 3. Linda Marie Smith

In 2003, Linda Smith and her husband decided to divorce. In the divorce negotiations, Smith quitclaimed her interest in the marital residence in exchange for expediting the divorce. Smith testified that there was no equity in the house, and she received nothing in return for giving up her interest. She got her divorce in June, 2003, but continued to suffer from financial problems.

In July of 2003, Smith lost her job at Shoney's Restaurant and testified that five minutes after leaving the restaurant, she called WTP at "44-LEGAL" and talked to a man about how to file bankruptcy. At WTP, she paid the $199 fee, and was given a workbook by Shannon Gould. Smith testified that she had difficulties with the workbook and took it back twice to ask questions. Specifically, she asked about Question 10 regarding transfer of property. According to Smith, Vincent Gould told her that the property transfer "wouldn't matter" and therefore, she left Question 10 blank. Smith testified that she told WTP about her divorce, and that she had left Question 4a,

asking for suits or administrative proceeding to which she had been a party within one year, blank as well.

Smith explained that Shannon Gould later called her to discuss the exemptions and the valuation of her car. Mrs. Gould told her Tennessee had a "wildcard exemption." Smith asked her what value to place on the car, and was told by Mrs. Gould that she could not advise her on that issue. When Smith then asked if $3,000 would work because she did not understand what Gould was talking about, she was told by Gould that it would.

When Mrs. Smith went back to sign her bankruptcy petition, she told WTP that she had obtained a job making about $1,400 per month. She thought this information was in the petition, Statements and Schedules that she signed. Smith paid Mr. Gould $200 for the filing fee and asked WTP to file her petition.

WTP filed the debtor's voluntary petition under Chapter 7 of the Bankruptcy Code on October 22, 2003. The debtor signed her petition, Statements and Schedules indicating that the information contained therein was correct. However, at the 11 U.S.C. § 341 Meeting of Creditors, upon questioning by the trustee, the debtor indicated that: (1) she had recently divorced; (2) that she had owned and quitclaimed her interest in real property to facilitate her divorce; (3) that she was employed at the time of filing her petition; and (4) that she did own an engagement ring (later valued at $1,000) that was not listed in the petition. Smith thought that she had properly filled out her petition, and she testified that she was completely cooperative with the trustee once she realized the errors and omissions contained in her original petition.

The trustee told the debtor after her Meeting of Creditors that she might need to

10-U.S. Bankruptcy Court, M.D. Tenn.

consult an attorney because of the omissions in the Statements and Schedules. The debtor hired an attorney after the trustee filed a § 727 action against her seeking to deny her discharge. The debtor's attorney then refiled her entire petition to accurately reflect the property transfer, her divorce, her employment and her engagement ring. The debtor provided all information requested of her to both the UST and the chapter 7 trustee. The debtor received nothing for her transfer of the real property and still had received no value as of the time of the petition or as of the Meeting of Creditors.

### B. The Trustee's § 727 Allegations

The trustee contends that these debtors' discharges should be denied pursuant to 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4) and/or (a)(5).

#### 1. Section 727(a)(2)

*11 U.S.C. § 727(a)(2)* denies the debtor a discharge if:

(2)   the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be, transferred, removed, destroyed, mutilated, or concealed—

  (A)   property of the debtor, within one year before the date of the filing of the petition; or
  (B)   property of the estate, after the date of the filing of the petition.

Under this statutory provision, the objecting party must prove actual intent to hinder, delay, or defraud a creditor. *Federal Deposit of Insurance Corporation v. Ligon (In re Ligon,* 55 B.R. 250, 252 (Bankr. M.D. Tenn. 1985). It is incumbent upon the plaintiff, as the objecting party, to show all of the elements necessary to deny the debtors their discharge. *Crebbs v. Epperson (In re Epperson),* 45 B.R. 708, 710 (Bankr. E.D. Tenn. 1985). Although all of the debtors in these cases transferred property of the estate prior to filing, the court finds that based on the credible testimony of all three debtors, that they did so without the requisite intent required to deny their

discharges. Accordingly, the court dismisses the 11 U.S.C. § 727(a)(2) allegations.

### 2. Section 727(a)(3)

*11 U.S.C. § 727(a)(3)* denies a debtor's discharge for:

> the debtor who has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

The purpose of this section is to enable creditors, with the assistance of adequate books and records, to ascertain the true status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge. *Blockman v. Becker (In re Becker)*, 74 B.R. 233, 236 (Bankr. E.D. Tenn. 1987). In determining the reasonableness of a debtor's records, the Court should consider:

> education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to the debtor in his business and any other circumstances that should be considered in the interest of justice.

*Becker*, 74 B.R. at 236.

Given the education, expertise and sophistication of these debtors, the court finds no basis to deny their discharge based on these allegations. Although the records provided to the trustee in each of the cases were not perfect, the testimony supported the debtors' honest efforts to comply to the best of their abilities. The decision to deny a discharge under § 727(a)(3) is to be made on a case-by-case basis based on specific factual circumstances in each case. These cases do not provide an adequate factual or legal basis to deny these debtors' discharges based on inadequate, missing, or unavailable records. The court, therefore dismisses all § 727(a)(3) allegations.

### 3. Section 727(a)(4)

Section 727(a)(4) provides:

(4) the debtor knowingly and fraudulently, in or in connection with the case--

> (A) made a false oath or account;
>
> (B) presented or used a false claim;
>
> (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
>
> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

In order to deny the debtor a discharge based on § 727(a)(4)(A), the trustee must prove that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir. 2000).

In these cases, it is clear that although the debtors' petitions, Statements and Schedules contained inaccuracies and/or omissions, it is equally clear that none of the debtors knew their statements were false. Equally compelling is that none of the false statements or omissions were intended to be fraudulent. To the contrary, all three debtors were very forthcoming once they realized their WTP petitions were incorrect.

The court finds that the trustee is unable to demonstrate the required elements of 11 U.S.C. § 727(a)(4), and therefore dismisses the complaint based on these allegations.

### 4. Section 727(a)(5)

11 U.S.C. § 727(a)(5) denies a discharge to:

> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

Section 727(a)(5) lacks a requirement of any culpable mental state for the denial of a discharge. The propriety of the loss, whether for illegal, immoral or otherwise imprudent activities, is not the direct concern of § 727(a)(5); this is left to other sections of the Bankruptcy Code. *Baker v. Reed (In re Reed),* 310 B.R. 363, 368-369 (Bankr. N.D. Ohio, 2004). Rather, when invoking § 727(a)(5), it is simply the adequacy of the explanation which is at issue. *Id.* (citing *Sonders v. Mezvinsky (In re Mezvinsky),* 265 B.R. 681, 690 (Bankr. E.D. Pa. 2001)).

Despite its standard of strict liability, § 727(a)(5), requires establishing that there exists the loss or the deficiency of a prepetition asset that could have been used to pay creditors. Once this burden has been established, the burden then shifts to the debtor to come forward with evidence that will satisfactorily explain the loss of the asset. *Id.* Generally, the explanation required of the debtors must convince the court "of good faith and businesslike conduct." *In re Sutton,* 39 B.R. 390 (Bankr. M.D. Tenn. 1984).

In these cases, the court finds that most likely there were no prepetition assets that could have been used to pay creditors, and furthermore, all of the debtors have satisfactorily explained all losses of all assets. The debtors' explanations convinced the court of their good faith and businesslike conduct. Accordingly, the court dismisses the dischargeability complaint based on § 727(a)(5).

## C. Conclusions on the 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4) and (a)(5) Complaints to Deny the Debtors' Discharges

The Section 727 provisions are to be construed liberally in favor of debtor and

strictly against the movant. *In re Becker*, 74 B.R. 233 (Bankr. E.D. Tenn. 1987). In these cases, the court finds that the trustee is unable to show by a preponderance of the evidence that their discharges should be denied based upon any of the § 727 provisions relied upon. Accordingly, the court dismisses all of the trustee's § 727 complaints against all three debtors in the *Finch, Toalson*, and *Smith* cases.

### III. Finch's, Toalson's and Smith's Case Against WTP for Breach of Contract, Negligence and Violations of 11 U.S.C. § 110.

#### A. Generally

In all three adversary proceedings, the debtor/defendants allege third-party complaints against Vincent and Shannon Gould and WTP. All assert various violations of 11 U.S.C. § 110 and theories including negligence and breach of contract. The debtors assert that the Goulds and WTP are liable for damages resulting from the denial of their discharge and/or the cost of defense of the § 727 actions. Although the pretrial orders in the three cases differ slightly, all three cases present the following issues:

1.  Whether the defendants are liable to the plaintiffs for negligence and/or breach of contract?

2.  Whether the debtors are entitled to damages for the third-party defendants' alleged violations of 11 U.S.C. § 110(f), (g), (h) and (i).[3]

---

[3] In the *Finch* adversary proceeding, the pretrial order set forth the following issues:

1.  Whether the Third-Party Defendants actually gave legal advice and are practicing law without a license.

2.  Whether they are liable for damages resulting upon the advice given.

3.  Whether the court should deny the discharge of the Debtor pursuant to 11 U.S.C. § 727(a)(2), § 727(a)(3), § 727(a)(4), and/or § 727(a)(5).

4.  Whether the court should enter a judgment against the Debtor in the amount of all unsecured, and under-secured debt in the case.

5.   Whether the court should require the Debtor to pay all costs of this cause, including attorney fees and expenses incurred by the Trustee.

6.   Whether the third-party complaint must be dismissed because it is based upon claims asserted under 11 U.S.C. § 110 and there is no private right of action which derives from that statute.

7.   Whether the third-party plaintiff [Finch] is entitled to a judgment over and against third-party defendant Gould for any relief the Court awards to plaintiff Waldschmidt, based on the defendant Gould's negligence and/or breach of contract.

8.   Whether this Court has the authority to award damages by the explicit terms of 11 U.S.C. § 110.

9.   Whether [Henry Dean Finch] is entitled to compensatory damages, statutory damages and cost[s] against Vincent Gould for violations of 11 U.S.C. §§ 110(f), (g), (h), and (i).

10.  Whether this Court may render a final judgment in respect to an action for an alleged breach of contract or negligence without the Defendant's consent.

In the *Toalson* adversary proceeding, the pretrial order set forth the following issues:

1.   Whether the court should deny the discharge of the Debtor pursuant to 11 U.S.C. § 727(a)(2), § 727(a)(3), § 727(a)(4), and/or § 727(a)(5).

2.   Whether the Debtor's reliance on representations made by the petitions preparers, "We the People" negated the intent required to deny him a discharge under § 727(a)(4).

3.   Whether the court should enter a judgment against the Debtor in the amount of all unsecured, and under-secured debt in the case.

4.   Whether the court should require the Debtor to pay all costs of this cause, including attorney fees and expenses incurred by the Trustee.

5.   Whether the third-party complaint must be dismissed because it is based upon claims asserted under 11 U.S.C. § 110 and there is no private right of action which derives from that statute.

6.   Whether the third-party plaintiff Toalson is entitled to a judgment over and against third-party defendant Gould for any relief the Court awards to plaintiff Waldschmidt, based on the defendant Gould's negligence and/or breach of contract.

7.   Whether Michael Toalson is entitled to compensatory damages, statutory damages and cost[s] against Vincent Gould for violations of 11 U.S.C. §§ 110(f), (g), (h), and (i).

8.     Whether this court has the authority to award damages by the explicit terms of 11 U.S.C. §110.

9.     Whether this Court may render a final judgment in respect to an action for an alleged breach of contract or negligence without the Defendant's consent.

In the *Smith* adversary proceeding, the pretrial order set forth the following issues:

1.     Whether the court should deny the discharge of the Debtor pursuant to 11 U.S.C. § 727(a)(2), § 727(a)(3), § 727(a)(4), and/or § 727(a)(5).

2.     Whether the court should enter a judgment against the Debtor in the amount of all unsecured, and under-secured debt in the case.

3.     Whether the court should require the Debtor to pay all costs of this cause, including attorney fees and expenses incurred by the Trustee.

4.     Whether the third-party plaintiff Smith is entitled to a judgment over and against third-party defendant Gould for any relief the Court awards to plaintiff Waldschmidt, based on the defendant Gould's negligence and/or breach of contract.

5.     Whether Linda Marie Smith is entitled to compensatory damages, statutory damages and cost[s] against Vincent Gould for violations of 11 U.S.C. §§ 110(f), (g), (h), and (i).

6.     Whether the third-party complaint must be dismissed because it is based upon claims asserted under 11 U.S.C. § 110 and there is no private right of action which derives from that statute.

7.     Whether this court has the authority to award damages by the explicit terms of 11 U.S.C. §110.

8.     Whether this Court may render a final judgment in respect to an action for an alleged breach of contract or negligence without the Defendant's consent.

In a motion to dismiss brought by the defendants, this court found that section 110 does indeed confer a private right of action to the plaintiffs. This court also ruled that after a notice and a hearing, this court certifies its factual findings to the United States District Court. Parties wanting to effectuate that order must then proceed in district court. Therefore, any issue stated in the pretrial orders relating to this court's authority to award damages has been addressed by this court's order of July 19, 2004 overruling the defendant's Motion to Dismiss, and is answered by the Bankruptcy Code in section 110. Accordingly, the only issues remaining in the pretrial order deal with the substantive matters of violations of section 110, negligence, breach of contract, and this court's authority to render a final decision on the negligence and breach of contract allegations.

In addition, the *Finch* case presented the issues of whether the Goulds' engaged in the unauthorized practice of law. Although various jurisdictional issues were raised by the defendants in their Motion to Dismiss, the court overruled all jurisdictional issues except the court's authority to render a final decision on the negligence and breach of contract matters.

### B. Section 110 Violations

Section 110 provides for monetary sanctions and injunctive relief against bankruptcy petition preparers who violate the specific provisions of the statute. For most of these requirements, the statute allows the court to impose a $500 fine for each violation. 11 U.S.C. §§ 110(b)(2), (c)(3), (d)(2), (e)(2), (f)(2) and (g)(2). The court may also disallow and order the turnover of any petition preparer fee found to be excessive. 11 U.S.C. § 110(h)(2). In addition, the Bankruptcy Court shall certify all violations of this section to the District Court, and a debtor, trustee or creditor may then move that court for actual damages, a penalty of $2,000 or twice the fees paid to the petition preparer, whichever is greater, and attorneys' fees and costs. 11 U.S.C. § 110(i)(1). The Bankruptcy Court may enjoin the petition preparer from engaging in further violations of the statute, or may permanently enjoin a petition preparer from preparing any petitions in the future. 11 U.S.C. § 110(j)(1). The statute, in its entirety, provides as follows:

(a) In this section -

    (1) "bankruptcy petition preparer" means a person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing; and

    (2) "document for filing" means a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under this title.

(b)    (1) A bankruptcy petition preparer who prepares a document for filing shall sign the document and print on the document the

preparer's name and address.

(2) A bankruptcy petition preparer who fails to comply with paragraph (1) may be fined not more than $500 for each such failure unless the failure is due to reasonable cause.

(c)  (1) A bankruptcy petition preparer who prepares a document for filing shall place on the document, after the preparer's signature, an identifying number that identifies individuals who prepared the document.

(2) For purposes of this section, the identifying number of a bankruptcy petition preparer shall be the Social Security account number of each individual who prepared the document or assisted in its preparation.

(3) A bankruptcy petition preparer who fails to comply with paragraph (1) may be fined not more than $500 for each such failure unless the failure is due to reasonable cause.

(d)  (1) A bankruptcy petition preparer shall, not later than the time at which a document for filing is presented for the debtor's signature, furnish to the debtor a copy of the document.

(2) A bankruptcy petition preparer who fails to comply with paragraph (1) may be fined not more than $500 for each such failure unless the failure is due to reasonable cause.

(e)  (1) A bankruptcy petition preparer shall not execute any document on behalf of a debtor.

(2) A bankruptcy petition preparer may be fined not more than $500 for each document executed in violation of paragraph (1).

(f)  (1) A bankruptcy petition preparer shall not use the word "legal" or any similar term in any advertisements, or advertise under any category that includes the word "legal" or any similar term.

(2) A bankruptcy petition preparer shall be fined not more than $500 for each violation of paragraph (1).

(g)  (1) A bankruptcy petition preparer shall not collect or receive any payment from the debtor or on behalf of the debtor for the court fees in connection with filing the petition.

(2) A bankruptcy petition preparer shall be fined not more than $500 for each violation of paragraph (1).

(h)  (1) Within 10 days after the date of the filing of a petition, a bankruptcy petition preparer shall file a declaration under penalty of perjury disclosing any fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case, and any unpaid fee charged to the debtor.

(2) The court shall disallow and order the immediate turnover to the bankruptcy trustee of any fee referred to in paragraph (1) found to be in excess of the value of services rendered for the documents prepared. An individual debtor may exempt any funds so recovered under section 522(b).

(3) The debtor, the trustee, a creditor, or the United States trustee may file a motion for an order under paragraph (2).

(4) A bankruptcy petition preparer shall be fined not more than $500 for each failure to comply with a court order to turn over funds within 30 days of service of such order.

(i)     (1) If a bankruptcy case or related proceeding is dismissed because of the failure to file bankruptcy papers, including papers specified in section 521(1) of this title, the negligence or intentional disregard of this title or the Federal Rules of Bankruptcy Procedure by a bankruptcy petition preparer, or if a bankruptcy petition preparer violates this section or commits any fraudulent, unfair, or deceptive act, the bankruptcy court shall certify that fact to the district court, and the district court, on motion of the debtor, the trustee, or a creditor and after a hearing, shall order the bankruptcy petition preparer to pay to the debtor -

        (A) the debtor's actual damages;

        (B) the greater of -

            (i) $2,000; or

            (ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and

        (C) reasonable attorneys' fees and costs in moving for damages under this subsection.

(2) If the trustee or creditor moves for damages on behalf of the debtor under this subsection, the bankruptcy petition preparer shall be ordered to pay the movant the additional amount of $1,000 plus reasonable attorneys' fees and costs incurred.

(j)     (1) A debtor for whom a bankruptcy petition preparer has prepared a document for filing, the trustee, a creditor, or the United States trustee in the district in which the bankruptcy petition preparer resides, has conducted business, or the United States trustee in any other district in which the debtor resides may bring a civil action to enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer.

(2)     (A) In an action under paragraph (1), if the court finds that-

(i) a bankruptcy petition preparer has -

(I) engaged in conduct in violation of this section or of any provision of this title a violation of which subjects a person to criminal penalty;

(II) misrepresented the preparer's experience or education as a bankruptcy petition preparer; or

(III) engaged in any other fraudulent, unfair, or deceptive conduct; and

(ii) injunctive relief is appropriate to prevent the recurrence of such conduct, the court may enjoin the bankruptcy petition preparer from engaging in such conduct.

(B) If the court finds that a bankruptcy petition preparer has continually engaged in conduct described in subclause (I), (II), or (III) of clause (i) and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, or has not paid a penalty imposed under this section, the court may enjoin the person from acting as a bankruptcy petition preparer.

(3) The court shall award to a debtor, trustee, or creditor that brings a successful action under this subsection reasonable attorney's fees and costs of the action, to be paid by the bankruptcy petition preparer.

(k) Nothing in this section shall be construed to permit activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law.

In these cases, all third-party plaintiffs assert that the defendants violated section 110(f), (g), (h) and (i). Before addressing these allegations however, it must be established that the third-party defendants are in fact petition preparers.

A bankruptcy petition preparer is defined in section 110(a)(1) to be a "person, other than an attorney, who prepares for compensation a document for filing." In this case, Mr. Vincent Gould testified that he and his wife were co-owners of the franchise

"We the People" in Nashville, Tennessee. Mr. Gould explained that he and his wife were "partners with each other" in operating the business they called "We the People Nashville." They owned and operated WTP Nashville for approximately 11 months from April 2003 until March 2004. Both Mr. and Mrs. Gould testified that they accepted compensation for their role as "glorified secretaries" for preparing bankruptcy petitions. Although Mrs. Gould testified that only her husband had actually signed the petitions, the proof was uncontradicted and even acknowledged by the Goulds, that both Mr. and Mrs. Gould prepared documents for filing with the anticipation of compensation.[4]

The court finds that Vincent Gould, Shannon Gould and We the People Nashville are all bankruptcy petition preparers within the meaning of section 110(a)(1).

### 1. Section 110(f)

All of the debtors independently testified that the phone number for WTP was "44-LEGAL." Section 110(f) prohibits a bankruptcy petition preparer from using the word "legal" or "any similar term" in an advertisement. Each violation subjects WTP to fine of not more than $500 for each violation.

This is a strict liability provision. *In re Gomez*, 259 B.R. 379, 385 (Bankr. D. Colo. 2001). In other words, there is no "reasonable cause" exception, and proof of each violation results in a fine of not more than $500 per violation. Section 110(f) is:

---

[4]The court also notes that Mrs. Gould was required to sign the petitions that she actually helped prepare. Her failure to do so is a direct violation of 11 U.S.C. § 110(b). *See In re Rose*, ___ B.R. ___, 2004 WL 2071772 (Bankr. E.D. Tenn. (Aug. 18, 2004)) (finding co-employee of We the People Knoxville office violated 11 U.S.C. § 110(b) by failing to sign an Official Form 19 Certification and Signature of Non-Attorney Bankruptcy Petition Preparer for petition she helped prepare). The instructions given for Official Form 19 specifically state if more than one person prepared the document for filing, then Official Form 19 must be filled out by and signed by each person who helped. *Id*.

> appropriately viewed as a measure meant to ensure that debtors understand exactly what they will and will not receive from bankruptcy petition preparers. Petition preparer advertising must keep well clear of any suggestion that the preparer will be offering legal services or insights.

*Fessenden v. Ireland (In re Hobbs)*, 213 B.R. 207, 215 (Bankr. D. Me. 1997).

In this case, the court found all of the debtors' and all of the supporting witnesses' testimony credible. Each recollected WTP's phone number. Mr. Finch testified that he remembered the phone number had the word "LEGAL" in it, and his friend Felicia Stevens testified that she recommended WTP to Mr. Finch after seeing the WTP advertisement on a bus bench. Mr. Toalson testified that he got a flyer in the mail that had the "44-LEGAL" phone number for WTP, and Ms. Smith testified that she remembered calling "44-LEGAL" just after leaving her job at Shoney's restaurant.

The testimony of Mr. and Mrs. Gould provided absolutely no contradictory evidence. Neither Mr. nor Mrs. Gould even addressed these allegations other than acknowledging that the "LEGAL" was in their phone number. The court is more than satisfied that the proof demonstrates at least three violations of section 110(f). Accordingly the court finds that the third-party defendants should be fined $500 for each violation of section 110(f) in each of the three bankruptcy cases. The court finds a total fine of $1,500 shall be assessed jointly and severally among Vincent Gould, Shannon Gould and WTP Nashville.

### 2. Section 110(g)

Section 110(g) prohibits WTP from collecting or receiving any payment from the debtor for the court fees in connection with filing a petition. Although there is minor disagreement about the scope of this provision, it is clear that a petition preparer accepting money, that is later used to pay court filing fees, is a violation. *See In re*

*Buck*, 307 B.R. 157 (C.D. Ca. 2004) (noting the majority of courts prohibit any delivery by a petition preparer of a check or money order made out to the court, but at least one court more narrowly, only disallows funds deposited into the preparer's account).

In all three cases, however, these debtors testified that they paid WTP either in cash or money order made payable to Vincent Gould. Mr. Finch had receipts showing that he had paid WTP's fee and later paid WTP for the filing fee. His receipt shows $215 paid for "chapter 7 BK filing fee plus copy fee," and is signed by Vincent Gould. Likewise, Mr. Toalson paid WTP's fee on his first visit, and testified that he later paid the filing fee by a money order payable to Mr. Gould. Ms. Smith also paid the WTP fee of $199 and testified that she later made payment to Mr. Gould for the court costs and filing fees at the time of filing the petition.

Neither Mr. Gould nor Mrs. Gould addressed these allegations in their testimony. Mr. Gould did not even recall his dealings with any of the debtors except Mr. Finch, and his testimony concerning Mr. Finch did not touch upon the section 110(g) allegations. All of the debtors, on the other hand, testified credibly about their financial dealings with WTP, and the court finds their testimony and evidence sufficient to support a finding that section 110(g) was violated by Vincent and Shannon Gould and WTP.

Section 110(g) was enacted to: (1) prevent the unauthorized filing of petitions; (2) prevent or curtail the preparer's influence on a debtor's decision and timing of filing; and (3) prevent a preparer's misrepresentation or misquoting of the amount of the filing fee. *In re Buck*, 307 B.R. 157 (C.D. Ca. 2004) (quoting *2 COLLIER ON BANKRUPTCY ¶ 110.07 (15th ed. rev'd 2003)*). Because a bankruptcy petition preparer is prohibited from taking possession of a petition filing fee, the court finds that Vincent Gould and WTP violated section 110(g). There was absolutely no attempt to comply with the

statutory requirements of section 110(g), and therefore, the court finds that a $500 fine for each of the three violations should be imposed. A total fine of $1,500 shall be assessed jointly and severally among Vincent Gould, Shannon Gould and WTP Nashville.

### 3. Section 110(h)

Section 110(h)(2) prohibits a preparer from charging an excessive fee. This section allows the court to disallow and order the immediate turnover of any fee received within 12 months immediately prior to the filing of the case that is found to be excessive. Section 110(h)(2) leaves the entire or partial disallowance of a bankruptcy petition preparer's fee to the discretion of the court.

The Bankruptcy Court for the Eastern District of New York addressed the reasonableness of preparer fees:

> In deciding whether fees are excessive, the Court must determine the reasonable value of the services rendered. Courts have found bankruptcy petition preparers' services to be of no value or negative value where those services accomplished little benefit and, in some instances, harmed the debtor or put his or her bankruptcy discharge at risk. *See United States Trustee v. Womack (In re Paskel)*, 201 B.R. 511, 518 (Bankr. E.D. Ark. 1996), *appeal dismissed*, 201 B.R. 964 (Bankr. E.D. Ark. 1996), *aff'd*, 162 F.3d 1164 (8th Cir. 1998) (attributing a negative value to bankruptcy petition preparer's services where those services caused confusion as to Section 341(a) meetings and placed debtor at risk of having case dismissed for failure to appear at those meetings, where debtor was required to obtain services of an attorney to correct omission and errors on schedules, and where debtor was required to "endure" adversary proceeding in the case).

*In re Paysour*, 313 B.R. 109 (Bankr. E.D.N.Y. June 15, 2004); *see also Bonsenstein v. Shareef (In re Steward)*, 312 B.R. 172 (Bankr. N.D. Ill. 2004) (listing cases awarding compensation of $0 to $140).

The fee charged by WTP in all three cases was at least $199, exclusive of the filing fee. Because WTP cannot engage in the unauthorized practice of law, the type of services for which WTP is eligible for compensation under state law is limited to its "typing service." Mr. and Mrs. Gould testified that the $199 fee for their services took into account such issues as costs of the store front, employees, advertising and other overhead expenditures. The services, according to the Goulds, for bankruptcy document preparation were time consuming, and Mr. Gould had hoped to be able to charge more than $199.

Based on the proof in this case, the value of services provided to these debtors is unquestionably negative. WTP's involvement with the debtors has created incredible problems in these debtors' cases. All debtors had dischargeability actions brought against them by the chapter 7 trustee caused by inconsistencies and omissions in the petitions, and all of the debtors were forced to hire bankruptcy counsel to defend the dischargeability actions and to prosecute the third-party actions. Accordingly, the Court finds that the services rendered to these debtors by the Goulds and WTP had no value to the debtors. Pursuant to 11 U.S.C. § 110(h)(2), the Court will disallow and order the immediate turnover by Vincent Gould and WTP to the trustee of all fees paid by the debtors.[5]

### 4. Section 110(i)- Certification to the District Court

Section 110(i)(1) provides a two-tiered procedure involving the bankruptcy court and the district court. In the first instance, the bankruptcy court is required to ascertain the facts surrounding the alleged misconduct and, if the violations are found, certify the

---

[5] This is to include all "copy fees."

26-U.S. Bankruptcy Court, M.D. Tenn.

facts to the district court. The district court, upon a "motion" which may be made by the debtor, trustee or a creditor, must hold a hearing. If the bankruptcy court's findings of fact are affirmed, the district court must impose the full and exact penalty which the section provides. The penalty has three components: 1) the debtor's actual damages; 2) $2,000.00 or twice the amount paid by the debtor to the preparer, whichever is greater; and 3) the moving party's reasonable attorney fees and costs. Where the moving party is the trustee or a creditor, the district court is also required to order the preparer to pay the moving party an additional $1,000.00. *See 11 U.S.C. § 110(i)*.

WTP has raised the issue that this court cannot resolve the negligence and breach of contract actions, as such actions can only be heard in the United States District Court. This court disagrees. Judge Elizabeth Strong from the Bankruptcy Court for the Eastern District of New York recently issued a decision where WTP made many of the same arguments made in these cases. Judge Strong found that an adversary proceeding brought by the United States Trustee seeking monetary and injunctive relief against WTP arose under Title 11 and was a core proceeding giving the court subject matter jurisdiction to hear the causes of action raised against WTP as petition preparers. *Martini v. We the People Forms & Service Centers, USA, Inc. (In re Barcelo)*, 313 B.R. 135 (Bankr. E.D.N.Y. 2004). Judge Strong reasoned that all section 110 matters by their very nature "arise in" Title 11, and furthermore, the adversary proceeding was a "core matter" potentially affecting the administration of the debtor's estate. The court finds, for all the same reasons given by Judge Strong and the abundant case law therein, that the negligence and breach of contract allegations raised by the debtors in these cases are core proceedings and within this court's subject matter

27-U.S. Bankruptcy Court, M.D. Tenn.

jurisdiction.[6]

Section 110(i) provides that if a bankruptcy petition preparer violates this section or commits any fraudulent, unfair or deceptive act, then this court shall certify the findings of such to the district court.

Fraudulent, unfair or deceptive acts cover a broad spectrum of conduct. *See e.g. In re Barcelo*, 313 B.R. 135 (Bankr. E.D.N.Y. 2004)(finding that given the common and accepted statutory usage of "unfair and deceptive," and the widely known elements of fraud, the general statutory language of section 110(i) is not overbroad). "Unfair and deceptive" is commonly used in legislative statutes dealing with consumer issues. For example, the Tennessee Consumer Protection statutory provisions provide that unfair or deceptive acts include "engaging in any [ ] act or practice which is deceptive to the consumer or to any other person." *T.C.A. § 47-18-104 (2004)*. An extremely broad provision, the Tennessee Supreme Court has noted the difficulty in defining the operative terms of the statute. In *Ganzevoort v. Russell*, 949 S.W.2d 293 (Tenn. 1997) the Tennessee Supreme Court explained:

---

[6] Though the debtors couch their causes of actions in terms of breach of contract and negligence, the adversary proceeding, at its heart, is about the violations of 11 U.S.C. § 110(i). That section encompasses fraud, and unfair or deceptive acts. Any liability against the third-party defendants under section 110(i) would necessarily incorporate the debtor's "actual damages" for the resulting negligence and/or breach of contract. *See* 11 U.S.C. § 110(i) ("and the district court, on motion of the debtor, the trustee, or a creditor and after a hearing, *shall* order the bankruptcy petition preparer to pay to the debtor" (1) the debtor's actual damages, (2) the greater of $2,000 or twice the amount paid to the preparer for services; *AND* (3) reasonable attorney fees and costs in moving for damages). Accordingly, in deciding whether the third-party defendants violated section 110(i), the court considers the debtors' breach of contract and negligence claims. *See e.g., In re Lucas*, 312 B.R. 559 (Bankr. D. Md. (July 12, 2004)) (overruling a motion to dismiss a debtor's adversary proceeding alleging negligence and unauthorized practice of law treating all matters as 110(i) violations); *In re Gomez*, 259 B.R. 379 (Bankr. D. Colo. 2001) (debtor's motion alleging 110 violations similar to this case and certifying to district court after finding unfair acts of the petition preparers).

The Act states that in determining the statute's intended meaning the court should look to opinions concerning a similar provision in the Federal Trade Commission Act. Tenn.Code Ann. § 47-18-115 (1995). The federal courts have noted that the terms "unfair" and "deceptive" are incapable of close definition:

> It is important to note the generality of these standards of illegality; the proscriptions in § 5 are flexible, "to be defined with particularity by the myriad of cases from the field of business."

*Federal Trade Comm. v. Colgate-Palmolive Co.,* 380 U.S. 374, 384-85, 85 S.Ct. 1035, 1042, 13 L.Ed.2d 904(1965) (quoting *Federal Trade Comm. v. Motion Picture Advertising Service Co.,* 344 U.S. 392, 394, 73 S.Ct. 361, 363, 97 L.Ed. 426 (1953)). Without limiting the broad scope of the Act, the following definitions found in decisions from other jurisdictions clearly are applicable to this case. The Supreme Court of Vermont has held that "a 'deceptive act or practice' is a material representation, practice or omission likely to mislead a reasonable consumer." *Bisson v. Ward,* 160 Vt. 343, 628 A.2d 1256, 1261 (1993). A similar definition is found in *Connor v. Merrill Lynch Realty, Inc.,* 220 Ill.App.3d 522, 163 Ill.Dec. 245, 251, 581 N.E.2d 196, 202 (1991): "a deceptive practice is the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact."

*Ganzevoort v. Russell* 949 S.W.2d 293, 298-299 (Tenn. 1997). Thus, unfair acts and deceptive practices include such conduct or omissions that are likely to mislead a reasonable consumer. The proof in all three cases before the court is replete with evidence demonstrating unfair and deceptive practices by the third-party defendants.

All three debtors allege that the third-party defendants' "advice" caused the section 727 actions to be brought by the trustee, and made it necessary to hire counsel to defend those actions and prosecute WTP. The court finds that WTP's "assistance" to these debtors constituted unfair acts and deceptive practices, negligence and a breach of their contract to provide "typing services."

Mr. and Mrs. Gould's testimony was unhelpful in their defense of the section

110(i) allegations. Mrs. Gould had no recollection of dealings with any of the debtors. Mr. Gould remembered only his dealings with Mr. Finch and his testimony was inconsistent with Mr. Finch's version of events. Mr. Gould testified that he would never provide legal advice to the debtors. He explained that based on his WTP cultural training, that he and his wife were provided "scripts" of what to say to the debtors, and that it was office policy not to provide legal advice. Mr. Gould testified that if a debtor had a question, he simply re-read the question to them, and then if a debtor still did not understand, it was office policy to refer the clients to the "supervising attorney," Mr. Gould testified that he does not think he has ever deviated from that office policy.[7]

Mrs. Gould also testified that everything that was said to the debtors was "scripted." She also followed office policy of referring clients to the supervising attorney if they had a question. Although she did not remember any of the debtors specifically, Mrs. Gould testified that she had never provided valuation information. She explained that she and her husband bought the business to help people and making a judgment call might hurt someone; so, she did not do it.

Each of the debtors did have specific recall of their dealings with WTP, Mr. and Mrs. Gould. All three debtors assert that their recollections demonstrate negligence, breach of contract, the unauthorized practice of law and unfair and deceptive conduct

---

[7] Just the practice of referring debtors to a "supervising attorney" who could provide no representation of the debtors was an unfair and deceptive practice. It provided the debtors with a false sense of security that their legal needs could be met. *See In re Rose,* ___ B.R. ___, 2004 WL 2071772 (Bankr. E.D. Tenn. (Aug. 18, 2004)) (finding WTP practice of referring debtors to a "supervising attorney" for general legal questions was questionable because debtors are given a false sense of security); *In re Moore* 290 B.R. 287 (Bankr. E.D.N.C. 2003) (finding that WTP's method of referring customers to a supervising attorney is unfair and deceptive because customers are not informed that they cannot rely on that attorney's advice).

by the third-party defendants.

### (a) Negligence

In Tennessee, a claim of common law negligence requires proof of the following elements: a duty of care owed by the defendant to the plaintiff; conduct falling below the applicable standard of care that amounts to a breach of that duty; an injury or loss; cause in fact; and proximate or legal cause. *Gunter v. Laboratory Corp. of America* 121 S.W.3d 636, 639 (Tenn. 2003). Non-attorneys who attempt to practice law will be held to the same standards of competence demanded of attorneys and will be liable for negligence if these standards are not met. *See Tegman v. Accident & Medical Investigations, Inc.* 30 P.3d 8, 13 (Wash Ct. App. 2001) *rev. granted in part,* 43 P. 3d 21 (Wash. 2002) *and remanded,* 75. P.3d 497 (Wash. 2003).[8] In all three of these cases, all of the negligence elements are plainly met. If WTP is required to meet the same standard of competence demanded by attorneys, the conduct of the Goulds and WTP fell substantially below that bar.

Examples of the negligence by the third-party defendants are numerous including instructing Mr. Finch to omit a recent property transfer.[9] Likewise, Mr. Toalson was told by WTP to omit the sale of the Kentucky real property. WTP also marked out questions,

---

[8] Although not specifically addressed by the Tennessee or Sixth Circuit courts, the standard of care for a non-attorney attempting to practice law would necessarily be the same for a practicing attorney. To allow a lower benchmark would permit the non-attorney the excuse of failure to be licensed as a defense to his/her actions.

[9] Mr. Finch is the only party of whom Mr. Gould had any specific recollection. Mr. Gould alleges that he only remembers Mr. Finch coming to the store after his 341 meeting with the trustee asking for an amendment to his petition. Mr. Gould testified that Mr. Finch was given his workbook materials; that he re-read the question pertaining to property transfers; that Mr. Finch decided that the question did not apply, and that Mr. Finch then left the store without doing anything further. Mr. Finch's version of what occurred is quite different.

suggested property valuations, added exemption statutes, and suggested how to classify claims for Mr. Toalson. In Mrs. Smith's case, WTP instructed her to leave out the recent quitclaim of her marital residence to her soon-to-be ex-husband, excluded her new employment from the petition after being informed of such by Smith, and "helped" the debtor with the valuation of her vehicle for exemption purposes. This course of conduct is actionable as negligence, breach of contract, the unauthorized practice of law, and/or violations of 11 U.S.C. § 110(i) as unfair and deceptive.

When the third-party plaintiffs "helped" these debtors by filling in unsolicited answers, supplying relevant code sections, suggesting valuations, determining what court the petitions should be filed in, providing advice on how to answer certain questions, and crossing out questions that should have been answered, they did so negligently. As a direct result of that negligence, all of these debtors had their discharges challenged by the chapter 7 trustee, and were forced to hire counsel to defend themselves and prosecute the third-party defendants. The court finds the third-party defendants were negligent in their conduct as it relates to these debtors, and that negligence was the proximate cause of these debtors' losses.

### (b) Unauthorized Practice of Law

Whether the third-party defendants' conduct is characterized as negligent, or the unauthorized practice of law, it is clearly unfair and deceptive conduct under section 110(i). *See In re Schneider*, 271 B.R. 761, 764 (Bankr. D.Vt. 2002) ("[T]he BPP moves at his or her peril when performing any service beyond that of simply typing the information provided by a prospective debtor on approved bankruptcy forms."); *In re Guttierez*, 248 B.R. 287, 297 (Bankr. W.D. Tex. 2000) ("Section 110 itself proscribes virtually all conduct falling into the category of guidance or advice, effectively restricting

'petition preparers' to rendering only 'scrivening/typing' services. Anything else-be it suggesting bankruptcy as an available remedy for a debtor's financial problems, merely explaining how to fill out the schedules, or answering questions about exemptions or whether a claim is or is not secured will invariably contravene either state laws proscribing the unauthorized practice of law or other more specific provisions of § 110."); *In re Graham* 2004 WL 1052963, at *8 (Bankr. M.D.N.C.) (Feb. 13, 2004) (same).

Several courts have found that the unauthorized practice of law constitutes a fraudulent, unfair or deceptive act under section 110(i).[10] *See e.g., Scott v. United States Trustee (In re Doser)*, 292 B.R. 652, 659 (D. Idaho 2003); *In re Lucas*, 312 B.R. 559 (Bankr. D. Md. 2004); *In re Dunkle*, 272 B.R. 450, 456 (Bankr. W.D. Pa. 2002); *In re Bush,* 275 B.R. 69 (Bankr. D. Idaho 2002); *In re Gomez*, 259 B.R. 379 (Bankr. D. Colo. 2001); *In re Moffett*, 263 B.R. 805, 813 (Bankr. W.D. Ky. 2001). The Tennessee Attorney General has spoken on the unauthorized practice of law by document preparation services in Tenn. Op. Atty. Gen. No. 94-101, 1994 WL 509446 (Tenn. A.G. 1994). The Opinion provides in relevant part:

> The Tennessee Constitution makes the State Supreme Court the repository of the inherent power of the judiciary in the state. *In re Petition of Burson*, 909 S.W.2d 768, 772 (Tenn. 1995). This inherent

---

[10] We the People has argued in the *Inmon* case, that the Tennessee Supreme Court, not this court, should determine whether any of the defendants have engaged in the unauthorized practice of law. In rejecting WTP's motion to certify this question to the Tennessee Supreme Court, this court found that it has the authority to determine such questions within the bankruptcy process.

Even if this court were somehow mistaken that the Tennessee Supreme Court should be the exclusive court to determine what constitutes the unauthorized practice of law, this court is the proper jurisdiction to determine if violations of section 110 have occurred. Thus, even if the third-party defendants were somehow found not to have engaged in the unauthorized practice of law, this court would nonetheless find their course of conduct equated to unfair and deceptive acts pursuant to section 110(i).

To enhance consistency, efficiency, and comity, this court orders that a copy of this decision be transmitted to the Tennessee Supreme Court for its review and any appropriate action.

33-U.S. Bankruptcy Court, M.D. Tenn.

authority includes the right to regulate and prevent the unauthorized practice of law. *Id.* at 773. T.C.A. § 23-3-103(a) prohibits any person from engaging in the "practice of law" or performing the "law business," without a license, subject to a limited exception for certain non-resident attorneys associated with Tennessee attorneys in cases pending in Tennessee. The terms "practice of law" and "law business" are defined by T.C.A. § 23-3-101 as follows:

> (a) The "practice of law" is defined to be and is the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court, commissioner, referee or any body, board, committee or commission constituted by law or having authority to settle controversies.

> (b) The "law business" is defined to be and is the advising or counseling for a valuable consideration of any person, firm, association, or corporation, as to any secular law, or the drawing or the procuring of or assisting in the drawing for a valuable consideration of any paper, document or instrument affecting or relating to secular rights, or the doing of any act for a valuable consideration in a representative capacity, obtaining or tending to secure for any person, firm, association or corporation any property or property rights whatsoever.

The provisions of T.C.A. § 23-3-101 are mirrored in rules regulating the practice of law adopted by the Tennessee Supreme Court, specifically Supreme Court Rules 6, 7 and 9. Supreme Court Rule 7, Article 1.01 states that "[n]o person shall engage in the 'practice of law' or the 'law business' in Tennessee except pursuant to the authority of this Court, as evidenced by licenses issued in accordance with this Rule, or in accordance with the provisions of this Rule governing special or limited practice." The Supreme Court has adopted the definitions of "practice of law" and "law business" contained in T.C.A. § 23-3-101(a). *See Tennessee Board of Law Examiners Statement of Policy Concerning the Meaning of "Practice of Law"*, at 8 (Sept. 25, 1984), adopted 267 Tenn. (3 Cody) XXXI (Dec. 19, 1984); *Petition of Tennessee Bar Association*, 539 S.W.2d 805, 809 (Tenn. 1976) (Harbison, J., concurring).

The purpose of the aforementioned provisions regulating the practice of law is "to prevent the public's being preyed upon by those who, for valuable consideration, seek to perform services which require skill, training and character, without adequate qualifications." *Third National Bank v. Celebrate Yourself Productions, Inc.*, 807 S.W.2d 704, 706 (Tenn. Ct. App. 1990). *See also Haverty Furniture Co. v. Foust*, 174 Tenn. 203, 124 S.W.2d 694, 698 (1939). Accordingly, in order to protect the public, one seeking to practice law must first meet certain standards established by the Tennessee Supreme Court and the conduct of those admitted to practice continues to be supervised and regulated by the Supreme Court through the Board of Professional Responsibility

established under Supreme Court Rule 9. As the Supreme Court has explained:

> [T]he practice of law is not a business open to all, but a personal right, limited to a few persons of good moral character, with special qualifications ascertained and certified after a long course of study, both general and professional, and a thorough examination by a state board appointed for the purpose. The right to practice law is in the nature of a franchise from the state conferred only for merit. It cannot be assigned or inherited, but must be earned by hard study and good conduct. It is attested by a certificate of the supreme court, and is protected by registration. No one can practice law unless he has taken an oath of office and has become an officer of the court, subject to its discipline, liable to punishment for contempt in violating his duties as such, and to suspension or removal. It is not a lawful business except for members of the bar who have complied with all the conditions required by statute and the rules of the courts.

*State ex rel. v. Credit Men's Association*, 163 Tenn. 450, 461-462, 43 S.W.2d 918 (1931). *See also Union City Obion County Bar Association v. Waddell*, 30 Tenn. Att. 263, 278-279, 205 S.W.2d 573 (1947).

> The definitions of the "practice of law" and "law business" as set forth in T.C.A. § 23-3-101 and adopted by the Tennessee Supreme Court are broad and clearly would preclude a person not licensed to practice law from preparing for others for a fee documents to be used in legal proceedings before Tennessee trial courts, including but not limited to divorce complaints and marital dissolution agreements. Previous opinions issued by this Office have reached the same conclusion under similar circumstances. *E.g., Op. Tenn. Atty. Gen. U93-42 (April 2, 1993)* (property managers, who are not attorneys, cannot appear before Tennessee trial courts on behalf of their clients even in uncontested litigation without legal representation); *Op. Tenn. Atty. Gen. 92-02 (Jan. 9, 1992)* (a paralegal, who acts independently of and is not supervised by a person licensed to practice law, cannot for a fee provide the service of completing legal documents such as bankruptcy petitions, uncontested divorce petitions, wills, or premarital agreements for individuals); *Op. Tenn. Atty. Gen. 91-54 (May 29, 1991)* (a non-attorney "managing agent" may not, either in an individual capacity or as an employee of a partnership or corporation, prepare a detainer warrant or other civil warrant pleading for an owner of real property and subsequently appear in General Sessions court without the owner and without an attorney to prosecute such warrant, since such representation would constitute the unauthorized practice of law); *Op. Tenn. Atty. Gen. U90-91 (May 17, 1990)* (a general power of attorney does not authorize an individual to represent another individual or a partnership before the General Sessions courts).

. . .

35-U.S. Bankruptcy Court, M.D. Tenn.

Trial courts, including Chancery courts, also possess statutory and inherent authority to inquire into the possible unauthorized practice of law before their courts, and to prohibit such practice by whatever means are appropriate, including injunction and contempt. As the Tennessee Supreme Court succinctly reasoned:

> To be sure there is a limitation upon the inherent authority of every court. But the court must be trusted with complete authority, consistent with constitutional rights and privileges of all citizens, to protect its own honor from those who would prostitute its processes for unlawful personal gain.

*Ex parte Chattanooga Bar Association*, 566 S.W.2d 880, 883 (Tenn. 1978), *quoting Ex parte Chattanooga Bar Association*, 206 Tenn. 7, 14, 330 S.W.2d 337 (1959). *See also Hicks v. Committee on Admissions*, 439 F. Supp. 302, 304 (E.D. Tenn. 1977) (establishment of reasonable standards for admission to practice is well within the power of a United States District Court); *In re Chas. A. Stevens & Co.*, 108 Bankr. 191, 194 (N.D. Ill. 1989) (unauthorized practice of law is potentially punishable as contempt of court and may be enjoined where it appears that an injunction is the only remedy to put a stop to such a practice); *Blodinger v. Broker's Title, Inc.*, 294 S.E.2d 876, 878 (Va. 1982) (court has the inherent power, apart from statute, to inquire into the possible unauthorized practice of law).

(Italics emphasis added). In Attorney General Opinion 92-02, the Attorney General concluded that a paralegal filling out forms, such as a bankruptcy petition, constituted the unauthorized practice of law:

> The key language of T.C.A. § 23-3-101(b) is "the drawing or the procuring of or assisting in the drawing for valuable consideration of any paper, document or instrument affecting or relating to secular rights...." The natural and ordinary meaning of that language encompasses the service of filling out legal documents such as bankruptcy petitions, uncontested divorce petitions, wills and pre-marital agreements for individuals for a fee. Accordingly, such activity can only be conducted by or under the supervision of a person licensed to practice law.
>
> . . .
>
> Accordingly, it is the opinion of this Office that persons, who are not licensed to practice law including paralegals, are prohibited by T.C.A. § 23-3-103 from providing the service of filling out legal documents such as bankruptcy petitions, uncontested divorce petitions, wills and pre-marital agreements for individuals for a fee.

Tenn. Op. Atty. Gen. No. 92-02, 1992 WL 544976. In these cases, WTP stepped over the line. Mr. and Mrs. Gould's general denials that they followed office policy of referring all questions to the supervising attorney are not only self-serving, but pale under

36-U.S. Bankruptcy Court, M.D. Tenn.

the weight of the specific and credible testimony of all three debtors. "Section 110 itself proscribes virtually all conduct falling into the category of guidance or advice, effectively, restricting 'petition preparers' to rendering only 'scrivening/typing' services." *See In re Guttierez*, 248 B.R. 287 (Bankr. W.D. Tex. 2000).[11] The court finds that under even the most generous definition of "unauthorized practice of law," WTP has engaged in the practice of law without a license. Whether the court characterizes their conduct as negligent, unauthorized practice of law or otherwise, the result is the same— "unfair and deceptive" within the meaning of section 110(i). The credible testimony of the debtors amply supports a finding that the third-party defendants have committed unfair and deceptive acts.

---

[11] *See also Hastings v. United States Trustee (In re Agyekum )*, 225 B.R. 695, 702 (9th Cir. BAP 1998) (preparer's use of questionnaire which solicited information he then used to complete petitions was unauthorized practice of law); *In re McDaniel*, 232 B.R. 674, 679 (Bankr. N.D. Tex.1999) (preparer gave clients unauthorized legal advice when he "applie[d] the statutes, rules, and information from publications to the facts of the particular cases" and when he "selected how creditors would be treated in the case"); *In re Moore*, 232 B.R. 1, 8 (Bankr. D. Me. 1999) (preparer gave legal advice without a license by informing debtor about bankruptcy chapters, selecting her exemptions, and opining on her ability to dispose of assets); *Ostrovsky v. Monroe (In re Ellingson)*, 230 B.R. 426, 433-34 (Bankr. D. Mont.1999) (preparer engaged in unauthorized practice of law when she advised debtors of available exemptions, "determined where property and debts were to be scheduled, summarized and reformulated information solicited from clients, and generated the completed bankruptcy forms"); *In re Gabrielson*, 217 B.R. 819, 826-27 (Bankr. D. Ariz. 1998) (finding that advising debtors about exemptions and which bankruptcy chapter to file, as well as drafting pleadings, is the practice of law); *In re Kaitangian*, 218 B.R. 102, 110-13 (Bankr. S.D. Cal. 1998) (finding that preparer engaged in unauthorized practice of law by advising debtors about exemptions, selection of appropriate chapters, reaffirmation of debts, the timing of bankruptcy filing, classification of debt, and the dischargeability of student loans); *United States Trustee v. Tank (In re Stacy)*, 193 B.R. 31, 39 (Bankr. D. Or. 1996) (preparer's practices constitute unauthorized practice of law because his activities "involve the exercise of informed or trained discretion in advising another of his or her legal rights and duties"); *In re Lyvers*, 179 B.R. 837, 842 (Bankr. W.D. Ky. 1995) (preparer engaged in unauthorized practice by answering debtors' questions concerning completion of bankruptcy petitions and advising debtors about exemptions); *In re Bright*, 171 B.R. 799, 803-05 (Bankr. E.D. Mich. 1994) (preparer's activities constituted unauthorized practice of law). *See also In re Gavin*, 181 B.R. 814, 821 (Bankr. E.D. Pa.1995).

### (c) Breach of Contract

The debtors also assert that the third-party defendants breached their services contract by providing legal advice. WTP's obligation to the debtors, as outlined in the Contract for Services, was to "complete a BANKRUPTCY form with information supplied by [the debtor] for the purpose of filing Pro Se (For Self) in the appropriate court." The contract further states that WTP are not attorneys and "will not provide legal advice in any form whatsoever."

Clearly this contract was breached by the outpouring of "assistance" given by the Goulds and WTP in all three cases. For all of the same reasons that the third-party defendants were negligent, they also breached their contract. Anything more than the promised scrivener service was a breach of contract. Not only did WTP breach the contract not to render legal advice, the third-party defendants negligently misled these debtors. Their conduct, established through the nearly uncontradicted and credible testimony of the three debtors, Mr. Toalson's brother, and Mr. Finch's friend, Felicia Stevens, demonstrated to the court beyond any doubt that these debtors were unfairly deceived by the third-party defendants.[12]

## C. Conclusions Regarding Section 110 Violations

The court finds that third-party defendants each be sanctioned for violations of

---

[12]Again, the testimony of Mr. and Mrs. Gould does little to help their defense of these claims. While the court did not find Mr. and Mrs. Gould to be acting with ill intent when answering questions for the debtors, the court did find the results of their "assistance" harmful. Mr. and Mrs. Gould's general denials and claims that they always followed office policy were unpersuasive in light of the debtors' testimony about the details of the dealings with Mr. and Mrs. Gould and WTP. The court found all of the debtors' testimony to be strong, precise and credible, and the Goulds' testimony, while not untruthful, to be self-serving, unspecific, and unpersuasive.

sections 110(f) and (g), at the maximum of $500 for each violation:[13] (1) a total of $1,500 jointly and severally against Vincent Gould, Shannon Gould and WTP Nashville for three separate violations of § 110(f); (2) a total of $1,500 against Vincent Gould, Shannon Gould and WTP Nashville, jointly and severally, for three separate violations of § 110(g); and (3) and because the court also finds that the fees paid by the debtors were excessive pursuant to section 110(h), the court orders all fees paid by the debtors to the third-party defendants be turned over to the trustee immediately pursuant to section 110(h)(2).[14]

Upon a finding of a violation of section 110, this court is to certify such findings

---

[13] There appears to be some disagreement among bankruptcy courts as to whether all findings under section 110 must be certified to the United States District Court for the imposition of sanctions or whether just § 110(i) findings must be certified. Judge Stair found in his *Rose* decision that the bankruptcy court could impose all § 110 sanctions, except § 110(i) which must be certified to the United States District Court. *See also In re Graves*, 279 B.R. 266 (9th Cir. BAP 2002) ("Congress did not prescribe such a procedure for the six subsections of § 110 that authorize fines and, likewise, said nothing about involving the district court in § 110(j) injunctions. 11 U.S.C. §§ 110(b)-(h) & (j)."); *In re Paysour* 313 B.R. 109 (Bankr. E.D.N.Y. 2004) (bankruptcy court imposed fines against We the People for violations of §§ 110(e) and (g)(1) and imposing fines); *In re Graham*, 2004 WL 1052963 (Bankr. M.D.N.C. (Feb. 13, 2004)) ("court also rejects the argument that the determination of whether a petition preparer has violated the provisions of § 110(b) through § 110(h) must be made by the district court rather than the bankruptcy court."); *In re Seehusen*, 273 B.R. 636 (Bankr. D. Colo. 2001) (bankruptcy court certified findings of § 110(i) violation, and fined petition preparer for other violations of § 110); *In re Moffett* 263 B.R. 805 (Bankr. W.D. Ky. 2001) (bankruptcy court imposed fines for violations of §§ 110(b) through (g), and certified § 110(i) violation to the district court). Other courts have certified all findings with respect to § 110 to the appropriate district court. *See e.g., In re Gomez*, 259 B.R. 379 (Banrk. D. Colo. 2001) (bankruptcy court certified all findings to the district court and recommended sanctions for violations of §§ 110(f) and (i)).

This court agrees with the majority of other courts addressing this issue that the bankruptcy court may sanction the third-party defendants except for § 110(i) which must be certified to the United States District Court.

[14]Section 110(h)(2) orders the funds be turned over to the trustee. However, that statutory provision also allows the debtors to exempt such funds. Subsection (3) allows the debtor, trustee, or creditor to file a motion for an order under subsection (2). Following such order, subsection (4) allows the court to fine up to $500 for failure to comply with the court's turnover order within thirty days of service of such order.

39-U.S. Bankruptcy Court, M.D. Tenn.

to the United States District Court. Therefore, the above factual and legal findings are hereby certified to the United States District Court for the Middle District of Tennessee. The court recommends that the third-party defendants be sanctioned for their numerous section 110(i) violations and that the debtors' be awarded their damages, including the costs and attorney fees for having to defend the trustee's section 727 adversaries pursuant to section 110(i)(1)(A); that the debtors be awarded $2000 under section 110(i)(1)(B), and that the debtors receive reasonable attorney fees and costs for the prosecution of this action against the third-party defendants pursuant to section 110(i)(1)(C).

This matter is CERTIFIED to the United States District Court for the Middle District of Tennessee. Under section 110, upon motion of the debtor, trustee or a creditor, the district court shall order the payment of damages following a hearing.

### IV. The United States Trustee's Section 110 Allegations In Antoinette Inmon Adversary Proceeding

In a separate, but consolidated adversary proceeding for trial, the UST alleges that Vincent Gould, We The People Forms and Service Center of Nashville, We The People Forms and Service Centers, USA, Inc., a California Corporation, and John David Moore, Supervising Attorney for We The People,[15] Nashville, Tennessee have violated the following sections of 11 U.S.C. § 110: (1) §110(b)(1) for failure to disclose all individuals associated with preparation of the petition of Antoinette Inmon; (2)§ 110 (c)(1) and (2)

---

[15] The UST's complaint names John David Moore as a defendant in his role as "supervising attorney" for the WTP Nashville office. The explicit language of section 110 pertains only to petition preparers, "other than an attorney." Mr. Moore was, and may still be, a licensed Tennessee attorney. Because the UST's own complaint states that Mr. Moore was not involved in the petition preparation; because he is a licensed attorney; and because the record is devoid of supporting proof of wrongdoing, the court hereby DISMISSES the complaint as to attorney John David Moore.

40-U.S. Bankruptcy Court, M.D. Tenn.

for failure to provide an identifying social security number; (3) § 110(f)(1) for use of the word "LEGAL" in advertisements for the defendants' services; (4) § 110 (g)(1) for collecting the filing fee from Antoinette Inmon; (5) § 110(h)(2) for charging an excessive fee for the preparation of Antoinette Inmon's petition: (6) § 110(i)(1) and §110(j) for alleged unfair and deceptive acts; (7) § 110(k) for the allegedly engaging in the unauthorized practice of law; and (8) § 110(j) for engaging in conduct that warrants the issuance of injunction to prevent the defendants from further § 110 violations. For all of the reasons cited herein, the court finds that the UST proved by a preponderance of the evidence, every allegation except with respect to § 110(g)(1). Accordingly, the court will certify its findings to the United States District Court for further action.

## A. Factual Background

Antoinette Inmon is a patient services coordinator at Vanderbilt Hospital. Ms. Inmon testified that she called WTP when she saw a WTP advertisement stating that bankruptcy filings were $199. Ms. Inmon remembered the phone number being "44-LEGAL." When she went into the store, accompanied by her mother, Mr. Gould was the only one there. She states that she was given a pamphlet and a workbook to fill out. She was also given: (1) a Bankruptcy Document Preparation Agreement stating that WTP are not attorneys and are prohibited from giving legal advice. The agreement also states that a WTP Supervising Attorney will assist if the debtor has questions but does not represent the debtor. Finally the Agreement provides that the fee is $199 plus the bankruptcy court filing fee of $200; (2) a WTP Chapter 7 Petition Customer Information Workbook for Ms. Inmon to fill out for information to be included in her bankruptcy petition; (3) a "Bankruptcy Overview-Chapter 7- Tennessee" pamphlet that provided basic information about bankruptcy and included some common questions asked during a Creditors Meeting; (4) a Tennessee Bankruptcy Exemptions Table that shows a list of exemption with the corresponding Tennessee Code Annotated sections; (5) a sheet

entitled "Tips on Filing a Chapter 7 Bankruptcy" which included tips on tax refunds, excess income, and how to get a higher dollar exemption for use of a motor vehicle;[16] (6) a "We the People Tennessee Step by Step Guide to Bankruptcy Workout" that included, among other things, instructions on how to fill out the workbook, examples of completed Statements and Schedules, and a list of Tennessee exemptions; (7) a list of where to file the bankruptcy petition entitled "Federal Bankruptcy Courts– Where to File Your Petition," broken down by city, county and district; and (8) a price list of all

---

[16] The "tip" sheet provided the following tips:

1) Tax Refunds
       If you are filing your bankruptcy during January through May of this year, you should plan your filing based on the possibility of a federal or state income tax refund. Income tax refunds that have not been received and spent by you are non-exempt property. If you are expecting a refund, the trustee will most likely arrange for you to turn the check over to their office when you receive it. One planning tip is to complete your workbook, but delay filing the bankruptcy petition until you have received your refund and spent it on necessities like food, rent and utilities, etc. This is permitted under law.

2) Excess Income
       When completing your workbook, you will need to list all of your monthly income from any source as well as your expenses. The trustee needs to determine whether you have excess income available to pay some of your debts. You need to be honest in your answer, but make sure that you list all expenses in your budget (i.e. you are entitled to some recreation and entertainment in your life). If at all possible, your expenses [sic] (after your debts are discharged) should be close to your expenses. If there is considerable excess income each month, the trustee can require you to convert your estate into a Chapter 13. What is considered considerable excess income can differ from trustee to trustee but an amount of $350 or more per month may be enough. Make sure that you include every possible expense in your budget.

3) Disabled or Elderly – Use of Motor Vehicle
       If you are disabled or elderly (over 65 yrs) and need the use of an automobile for the purpose of obtaining medical care for yourself or you have a disabled or elderly dependent and need the use of the vehicle for to [sic] obtain medical care for them you should use the exemption in your workbooks list regarding automobiles used by the disabled or elderly care. It will provide a higher exemption dollar amount to you.

42-U.S. Bankruptcy Court, M.D. Tenn.

products offered by WTP.[17]

Ms. Inmon began filling out the workbook while she was in the WTP office. She testified that whenever she came to a question she did not understand, she asked Mr. Gould. Her testimony was that Mr. Gould explained the question or provided examples to help her figure out the answers. When reviewing her workbook during her testimony, Ms. Inmon identified multiple places within her workbook that included handwriting that was not hers, instances where questions were filled out that she did not provide information for, questions that were marked through, but not by her, and other inconsistencies. These included but were not limited to:

| *What Was Done:* | *Information* | *Problem* |
|---|---|---|
| District and Division Filled in | District: Middle Division: Nashville | Debtor did not provide information and handwriting was not hers. |
| Schedule B Worksheet Items Filled in | #2 written in | Debtor was instructed to write #2 in Column 2 by Mr. Gould. |
| Schedule D "Return Keep or Surrender" Column Filled In | "Keep" written in | Debtor did not write the word "Keep" on the worksheet. |

---

[17] The packet of information given to Ms. Inmon appears to be substantially identical to the packets given out by the WTP Knoxville franchise in Judge Stair's *In re Rose* decision. In *Rose*, Judge Stair described the following documents that were given to the debtors: (1)Bankruptcy Document Preparation Agreement, (2) Customer Information Workbook, (3) Tennessee Step By Step Guide to Bankruptcy Workbook, (4) Bankruptcy Overview – Chapter 7 Tennessee (Overview), (5) Tennessee Bankruptcy Exemption Table, and (6) "Federal Bankruptcy Courts– Where to File Your Petition." Judge Stair found that the Customer Packet provides "problems" because the documents alone actually inform potential debtors what to include within their bankruptcy schedules. Judge Stair found that these documents "disseminate legal advice, some of which is misleading and contradictory." *See In re Rose*, ___ B.R. ___, 2004 WL 2071772 (Bankr. E.D. Tenn. (Aug. 18, 2004)).

43-U.S. Bankruptcy Court, M.D. Tenn.

| | | |
|---|---|---|
| Schedule C Filled in | Exempt Property is Filled in with Value of Exemption and Market Value of Property Assigned | Debtor testified that none of the writing on that page was hers. She does not and did not know what an exemption is. She did not provide values. |
| Schedule D Filled in that car was "repo." | The word "repo." is written in next to creditor information about her car | The debtor wrote that she "gave [the] car back" on the worksheet. Handwriting that was not hers, and she did not provide the information, states that the car was "repo." |
| Schedule I had Items Scratched Out | The debtor wrote in that she sometimes had overtime on Schedule I | That information was scratched out but she did not scratch it out. |
| Statement of Financial Affairs Question 5 Filled In | The creditor's name, claim amount, date and the debtor's return of the car are filled in | The information is not in the debtor's handwriting. The debtor did not provide the $5,000 value. |
| Statement of Financial Affairs Question 9 Filled Out | The debtor's payment of $199 to We The People is filled out | The information is not in the debtor's handwriting and she does not know who filled it out. |

Ms. Inmon also testified that Mr. Gould helped her value her automobile and told her to use a "quick sale" value. After completing her paperwork, Ms. Inmon paid $199 to Mr. Gould. She explained that she went back in again to sign her petition and accompanying documents. She was not given her workbook to compare to her petition, but she reviewed the petition briefly and then signed all required papers.

Mr. Gould recalls his dealings with Ms. Inmon quite differently. Mr. Gould testified that Ms. Inmon was accompanied by a woman and a man when she came in. The woman was very friendly and helpful and told Ms. Inmon that she would help her because she had filed bankruptcy before. He testified that after she filled out her worksheet, she left. When he reviewed it, he realized that she had left many parts of the worksheet blank. Mr. Gould explained that he called Ms. Inmon to come back in, but because she was in a rush, he agreed to ask her questions over the phone. Mr. Gould

states that he then went through every blank that Ms. Inmon did not complete, read the question to her, and then wrote in the answers. Whenever Ms. Inmon had a question, Mr. Gould testified that he re-read the question to her, and if she still did not understand at that point, he would have referred her to the supervising attorney. Mr. Gould denied that he had ever provided Ms. Inmon with answers, and explained that he had never even directed Ms. Inmon where to look in her workbook for answers. He insisted that he instructed Ms. Inmon to rely upon the information packet and the workbook or to call the supervising attorney.

When the paperwork was then completed, Mr. Gould testified that he sent the workbook to the processing center for actual formatting and typing of the petition. Mr. Gould clarified that although his WTP office gathered all of the petition information, the actual processing of the documents for filing is handled by the WTP processing centers around the country. The WTP USA franchisor then receives a portion of the franchisee's fees by sharing in a percentage of the franchisee's gross profits.

Based upon these facts, the UST argues that the defendants have violated section 110 and should be enjoined from repeating these practices in this district. The defendants argue that section 110 has not been violated and that there is no need for an injunction since Vincent Gould and We The People, Nashville are no longer operating in this district.

### B. Discussion

#### 1. Section 110(a)

This court has already found that Vincent Gould and We the People, Nashville are bankruptcy petition preparers within the meaning of section 110(a). The court must likewise confirm the applicability of that section to We the People, USA, Inc.. Section

110 applies only to non-attorneys who prepare bankruptcy documents, and by its own terms, the statute covers any person that is not a licensed attorney who types or prepares bankruptcy documentation for a debtor who then files a pro se bankruptcy petition. "Person" is a defined term under the Bankruptcy Code and includes corporations. *See 11 U.S.C. § 101(41)*. The court finds that We the People, USA also qualifies as a petition preparer under 11 U.S.C. § 110. *See also In re Rose*, ___ B.R. ___, 2004 WL 2071772 (Bankr. E.D. Tenn. (Aug. 18, 2004))(finding WTP USA are petition preparers); *In re Paysour* 313 B.R. 109 (Bankr. E.D.N.Y. 2004) (same); *In re Douglas*, 304 B.R. 223 (Bankr. D. Md. 2003) (same); *In re Moore*, 290 B.R. 287 (Bankr. E.D.N.C. 2003) (specifically addressing WTP USA's status and finding same); *In re Doser*, 281 B.R. 292 (Bankr. D. Idaho 2002) (same).

Given the testimony that WTP USA receives a portion of WTP Nashville's gross profits and that WTP USA actually operates the processing centers used by the franchisees to process the bankruptcy documents, the court finds that WTP USA is likewise a petition preparer under section 110(a).

### 2. Section 110(b)(1) and Section 110(c)(1) and (c)(2)

Under § 110(b)(1), petition preparers must sign documents they prepare and print their names and addresses. Under § 110(c), they must disclose their social security number on each document they prepare. The petition, schedules and statement of affairs each constitute separate documents. *In re Jolly,* 313 B.R. 295, 300-01 (Bankr. S.D. Iowa 2004). The preparer may be fined up to $500 for each violation. *Id.* at 301-02; *11 U.S.C. § 110(b)(2), (c)(3).*

More specifically, as succinctly explained in Judge Stair's *Rose* decision:
a bankruptcy petition preparer is required to sign and file a Certification

and Signature of Non-Attorney Bankruptcy Petition Preparer (Official Form 19) for all documents prepared for and to be filed by the debtor. Additionally, a variation of this certification has been incorporated into the following specific documents, requiring the bankruptcy petition preparer to sign them as well: (1) the Voluntary Petition; (2) the Declaration Concerning Debtor's Schedules as the Non-Attorney Petition Preparer; (3) the Certification and Signature of Non-Attorney Bankruptcy Petition Preparer for each Statement of Financial Affairs; (4) the Statement of Intention; (5) the Application to Pay Filing Fee in Installments; and (6) the Disclosure of Compensation of Bankruptcy Petition Preparer. . . .Pursuant to 11 U.S.C.A. § 110(b)(2), the court may impose this statutory fine for each separate document that a bankruptcy petition preparer fails to sign, as § 110(a)(2) applies to the petition and each of the various schedules and statements required of debtors [as] separate documents for purposes of § 110. *Fessenden v. Ireland (In re Hobbs)*, 213 B.R. 207, 212 (Bankr. D. Me. 1997) ("Requiring petition preparers to sign each separate form recognizes the reality that a debtor's petition, schedules, statements of affairs, and other required documents are not always filed together, or necessarily even filed."); *see also Staiano v. File Aid of N.J. (In re Bradshaw)*, 233 B.R. 315, 326 (Bankr. D.N.J. 1999) (agreeing that "petitions, plans, schedules, statements, certifications, motions, and other documents filed in bankruptcy cases are each a separate 'document for filing' for purposes of [§ ] 110."); *Hartman*, 208 B.R. at 777 (holding that each document containing a signature line is separate and therefore, failure to sign them constitutes separate violations of § 110).

*Rose*, 2004 WL 2071772, at *8.


In this case, the following documents were filled out:

| Document | Vincent Gould | WTP Nashville | WTP USA |
|---|---|---|---|
| Voluntary Petition | Signed "Vincent Gould" with social security number, name and address | No mention of WTP Nashville | No mention of WTP USA |
| Declaration Concerning Debtor's Schedules | Signed "Vincent Gould" with social security number, name and address | No mention of WTP Nashville | No mention of WTP USA |
| Certification and Signature of Non-Attorney Bankruptcy Petition Preparer for each Statement of Financial Affairs | Signed "Vincent Gould" with social security number, name and address | No mention of WTP Nashville | No mention of WTP USA |

47-U.S. Bankruptcy Court, M.D. Tenn.

| Statement of Assistance of Non-Attorney with Respect to The Filing of This Petition | Signed "Vincent Gould" with social security number, name and address | WTP Nashville 86 Thompson Ln. Nashville, TN 37211 (615) 445-3425 | WTP USA 44 Cooper Street Woodbury, NJ 08096 (856) 384-0306 |
| --- | --- | --- | --- |
| Disclosure of Compensation | Signed "Vincent Gould" with social security number, name and address | No mention of WTP Nashville | No mention of WTP USA |

The UST argues that the "Statement of Assistance of Non-Attorney" indicates that WTP Nashville and WTP USA were persons or firms that assisted the debtor in connection with this bankruptcy case. However, Question 9 of the Statement of Financial Affairs[18] does not list WTP USA; Official Form B1 fails to list WTP USA; and none of the documents above include WTP USA. Furthermore, WTP USA did not disclose the individuals who assisted with the petition preparation by providing a name or social security number.

At trial, the UST introduced the Petition, Schedules, Statement of Financial Affairs, and all accompanying documents into evidence. The exhibits show that Vincent Gould signed all required disclosures, including filling out Question 9 of the Statement of Financial Affairs. He also provided his social security number as required by section 110(c)(1) and (2). WTP Nashville and WTP USA, however, did not. There is no disclosure by WTP Nashville or WTP USA on: (1) the voluntary petition, (2) the Declaration concerning the schedules, (3) the Certification, or (4) the disclosure of compensation. No individual name or social security number is provided for those who

---

[18] Question 9 on the Statement of Financial Affairs asks about Payments related to debt counseling or bankruptcy. On Ms. Inmon's petition, WTP Nashville is listed with an address, and also discloses the $199 fee that was paid on July 10, 2003.

48-U.S. Bankruptcy Court, M.D. Tenn.

"assisted" from WTP USA. The defendants offered no rebuttal proof on this issue.

Even though the court is authorized to impose statutory fines upon WTP Nashville and WTP USA in an aggregate amount up to $8,000 for the sixteen separate violations of § 110(b)(1), it declines to do so at this time. Since Mr. Gould made all required disclosures, and WTP Nashville was an unincorporated business, the court finds Mr. Gould's full disclosure negates the necessity to fine WTP Nashville. The court does, however, find a $500 fine for each violation against WTP USA should be imposed. There was absolutely no attempt to comply with the statutory requirements of section 110(b)(1), section 110(c)(1) and (2), and therefore, the court finds that a $4,000 fine for the eight individual violations against WTP USA is imposed.

### 3. Section 110(f)(1)

Section 110(f)(1) prohibits the use of the word "legal" or any similar term for advertisements. In this case, the UST provided absolutely uncontroverted proof of the following violations by Vincent Gould, WTP Nashville and WTP USA; (1) the Tennessean's "$hopping $ense" (May 28, 2003) advertising "We the People's" services and showing the phone number as "44-LEGAL"; (2) "March into Spring" Circular advertising "We the People's" services and showing a phone number of "44-LEGAL"; (3) Bellsouth's "The Real Yellow Pages" advertising "We the People's" services and showing the phone number as "44-LEGAL"; (4) a photograph of a bench at a bus stop advertising "We the People's" services and showing the phone number as "44-LEGAL"[19]; (5) a Shoney's Restaurant "Graffiti Indoors" bathroom sign advertising "We

---

[19] The proof also includes the uncontradicted affidavit of Charles Walker, an attorney in the United States Trustee's Office stating that the bench was at a bus stop located on the intersection of Jefferson Street and 8th Avenue, North in Nashville, Tennessee.

the People's" services and showing the phone number as "44-LEGAL"[20] and; (6) The "Thrifty Nickel" circular dated October 2, 2003 advertising "We the People's" services and showing the phone number as "44-LEGAL." Furthermore, Ms. Inmon specifically recalled WTP Nashville's phone number as "44-LEGAL" from the advertisement she saw in the newspaper for WTP's services.[21]

The court finds overwhelming evidence to support at least seven violations of section 110(f). The six instances as shown by the UST's documented proof and Ms. Inmon's specific recall of the phone number all indicate that Vincent Gould, WTP Nashville and WTP USA completely disregarded the Bankruptcy Code's prohibition against advertisements including the term "legal."

As noted above, this is a strict liability provision. *In re Gomez*, 259 B.R. 379, 385 (Bankr. D. Colo. 2001). In other words, there is no "reasonable cause" exception, and proof of each violation results in a fine of not more than $500 per violation. In light of the unmitigated, blatant advertisement violations, the court finds a $500 fine for each of the violations should be imposed against Vincent Gould and WTP USA. Accordingly, the court orders Vincent Gould and WTP USA each be fined $3,500.

### 4. Section 110(g)(1)

Section 110(g)(1) prohibits a bankruptcy petition preparer from collecting the filing fee from the debtor. Although Ms. Inmon stated that she paid Mr. Gould the $199

---

[20] This exhibit was also supported by the uncontested affidavit of Lloyd Mueller, an attorney in the United States Trustee's Office, stating that this advertisement was in the men's restroom at the Shoney's Restaurant on White Bridge Pike in Nashville, Tennessee on January 14, 2004.

[21] The franchise agreement between Vincent Gould and WTP USA indicates that WTP USA would share in the advertising costs during the first three months of operation of the franchise.

fee for WTP's services, the court heard no proof in Ms. Inmon's case about the payment of the filing fee. The UST alleges that Mr. Gould accepted the filing fee from Ms. Inmon and paid that filing fee to the court when he filed Ms. Inmon's petition. However, without proof of the payment in the form of testimony from Ms. Inmon or a receipt, the court is unable to find any violation of section 110(g)(1) on the proof before it. Accordingly, the court dismisses the UST's complaint on the section 110(g)(1) allegations only.

### 5. Section (h)(2)

Section 110(h)(2) prohibits a preparer from charging an excessive fee. The Bankruptcy Court for the Eastern District of New York addressed the reasonableness of preparer fees:

> In deciding whether fees are excessive, the Court must determine the reasonable value of the services rendered. Courts have found bankruptcy petition preparers' services to be of no value or negative value where those services accomplished little benefit and, in some instances, harmed the debtor or put his or her bankruptcy discharge at risk. *See United States Trustee v. Womack (In re Paskel)*, 201 B.R. 511, 518 (Bankr. E.D.Ark. 1996), *appeal dismissed*, 201 B.R. 964 (Bankr. E.D. Ark. 1996), *aff'd*, 162 F.3d 1164 (8th Cir.1998) (attributing a negative value to bankruptcy petition preparer's services where those services caused confusion as to Section 341(a) meetings and placed debtor at risk of having case dismissed for failure to appear at those meetings, where debtor was required to obtain services of an attorney to correct omission and errors on schedules, and where debtor was required to "endure" adversary proceeding in the case).

*In re Paysour*, 313 B.R. 109 (Bankr. E.D.N.Y. June 15, 2004)); *see also Bonsenstein v. Shareef (In re Steward)*, 312 B.R. 172 (Bankr. N.D. Ill. 2004) (listing cases awarding compensation of $0 to $140).

The court finds, for most of the same reasons cited in the dischargeability complaints above, that the $199 fee is excessive. Because the defendants cannot engage in the unauthorized practice of law, the defendants can only be compensated as

a "typing service." Mr. and Mrs. Gould testified that the $199 fee for their services took into account such issues as costs of the store front, employees, advertising, and other overhead expenditures.

Based on the proof in this case, the value of services provided to Ms. Inmon was no more than $30. Although Ms. Inmon did not have a dischargeability complaint lodged against her, she has been heavily burdened by her association with the defendants. The court finds that a reasonable fee for the scrivener services provided to Ms. Inmon is $30. Accordingly, pursuant to 11 U.S.C. § 110(h)(2), the Court will disallow and order the immediate turnover by Vincent Gould, WTP Nashville, and WTP USA to the trustee of all fees in excess of $30 paid by Ms. Inmon.

### 6. Section 110(i) and Section 110(k)

The UST alleges that the defendants engaged in the unauthorized practice of law and engaged in unfair and deceptive acts under sections 110(k) and 110(i). Section 110(k) states that nothing in section 110 allows the unauthorized practice of law by a bankruptcy petition preparer, and section 110(i) prohibits a bankruptcy petition preparer from engaging in unfair and deceptive acts.

For many of the same reasons discussed in the dischargeability cases above, the court finds that the defendants have engaged in the unauthorized practice of law, and therefore committed unfair and deceptive acts in violation of sections 110(k) and 110(i). Even if their conduct did not rise to the level of unauthorized practice of law, the conduct was nonetheless unfair and deceptive pursuant to section 110(i).

The proof in Ms. Inmon's case overwhelmingly supports this court's conclusion. Ms. Inmon herself was an articulate and thorough witness, and provided credible and

understandable testimony about her dealings with the defendants. She noted several instances where her workbook answers were supplied by someone else in her absence and without her permission, instances where questions had been marked through by someone else without her permission, instances where Mr. Gould "helped" her answer questions, and instances where information was in someone else's handwriting without her permission and in her absence. Ms. Inmon's discharge was not being challenged and she had no motive to distort or otherwise exaggerate the truth. Her testimony was credible and independently supports this court's conclusions.

However, in addition to Ms. Inmon's testimony, the court also had the documentary evidence including the "packet" given to Ms. Inmon by the defendants. This court agrees with Judge Stair that the "packet" alone demonstrates not only the unauthorized practice of law but also unfair and deceptive conduct. When the defendant acted beyond their promised role of "typing service" or as paraphrased by Mrs. Gould, "glorified secretaries," they acted at their peril. *See In re Schneider*, 271 B.R. 761, 764 (Bankr. D.Vt. 2002) ("[T]he BPP moves at his or her peril when performing any service beyond that of simply typing the information provided by a prospective debtor on approved bankruptcy forms."); *In re Guttierez*, 248 B.R. 287, 297 (Bankr. W.D. Tex.2000) ( "Section 110 itself proscribes virtually all conduct falling into the category of guidance or advice, effectively restricting 'petition preparers' to rendering only 'scrivening/typing' services. Anything else-be it suggesting bankruptcy as an available remedy for a debtor's financial problems, merely explaining how to fill out the schedules, or answering questions about exemptions or whether a claim is or is not secured will invariably contravene either state laws proscribing the unauthorized practice of law or other more specific provisions of § 110."); *In re Graham* 2004 WL 1052963, *8 (Bankr. M.D.N.C. (Feb. 13, 2004)) (same).

This court agrees with several other courts who have found that the unauthorized practice of law constitutes a fraudulent, unfair or deceptive act under section 110(i). *See e.g., Scott v. United States Trustee (In re Doser)*, 292 B.R. 652, 659 (D. Idaho 2003); *In re Lucas*, 312 B.R. 559 (Bankr. D. Md. 2004); *In re Dunkle*, 272 B.R. 450, 456 (Bankr. W.D. Pa. 2002); *In re Bush*, 275 B.R. 69 (Bankr. D. Idaho 2002); *In re Gomez*, 259 B.R. 379 (Bankr. D. Colo. 2001); *In re Moffett*, 263 B.R. 805, 813 (Bankr. W.D. Ky. 2001). However, even if the court is somehow mistaken that the defendants' conduct does not rise to that level, the court nonetheless finds the conduct unfair and deceptive under section 110(i). As stated earlier, fraudulent, unfair or deceptive acts cover a broad spectrum of conduct. *See e.g. In re Barcelo*, 2004 WL 1833245, *6 (Bankr. E.D.N.Y. 2004)(finding that given the common and accepted statutory usage of "unfair and deceptive," and the widely known elements of fraudulent conduct general statutory language of section 110(i) was not overbroad). Unfair acts and deceptive practices include such conduct or omissions that are likely to mislead a reasonable consumer. *See Ganzevoort v. Russell* 949 S.W.2d 293, 298-299 (Tenn. 1997). Ms. Inmon's case is saturated with evidence demonstrating unfair and deceptive practices by the defendants.

In accord with the procedures set forth in section 110, the court recommends that Vincent Gould, WTP Nashville and WTP USA be sanctioned for their numerous section 110(i) violations; that the debtor be awarded damages pursuant to section 110(i)(1)(A); that the debtor be awarded $2000 under section 110(i)(1)(B), and that reasonable attorney fees and costs be awarded pursuant to section 110(i)(1)(C).

This matter is CERTIFIED to the United States District Court for the Middle District of Tennessee. Under section 110, upon motion of the debtor, trustee or a creditor, the district court shall order the payment of damages following a hearing.

54-U.S. Bankruptcy Court, M.D. Tenn.

## 7. Section 110(j)

Finally, the UST seeks, pursuant to section 110(j) to enjoin the defendants from continuing the above violations. Section 110(j) provides that if the court finds that the bankruptcy petition preparer has engaged in any violation of section 110, misrepresented experience or education, or engaged in any fraudulent, unfair or deceptive conduct, then the court may enjoin the bankruptcy petition preparer from engaging in such conduct. *11 U.S.C. § 110(j)(2)(A).* If the court finds that the violations are continual and an injunction would not be sufficient to prevent further injury, the court may enjoin the defendants from acting as bankruptcy petition preparers in the future.

The court finds ample proof in this record to support an injunction against any future violations of section 110(b), section 110(c), section 110(f), section 110(h), and section 110(i). For all of the reasons given above supporting each of these violations, the court finds the injunction necessary. The injunction applies equally to Vincent Gould, We the People Nashville, and We the People USA. The court finds that Vincent Gould, We the People Nashville, and We the People USA are hereby enjoined from providing the "packet" of information to customers including the "Bankruptcy Overview-Chapter 7- Tennessee," the Tennessee Bankruptcy Exemptions Table, the "Tips on Filing a Chapter 7 Bankruptcy" and the "We the People Tennessee Step by Step Guide to Bankruptcy Workout," the list of where to file the bankruptcy petition entitled "Federal Bankruptcy Courts– Where to File Your Petition," broken down by city, county and district and the "Bankruptcy Workbook" as it appeared in Ms. Inmon's case. The court finds that all of these practices, were unfair and deceptive and therefore enjoins the defendants from such further conduct. Likewise enjoined is the defendants' conduct providing any legal advice to clients. Providing services that are more than mere scrivener services would be a further violation of section 110, and a violation of this

court's injunction. *See also In re Moore* 290 B.R. 287, 299 (Bankr. E.D.N.C. 2003)(also enjoining further use of "customer packet" by WTP as unfair and deceptive conduct).

### C. Conclusion in the Inmon Case

In conclusion, the court finds numerous § 110 violations. This court is to certify such findings to the United States District Court for the § 110(i) violations. Therefore, the above factual and legal findings are hereby certified to the United States District Court for the Middle District of Tennessee. The court also finds that the defendants each be sanctioned as follows for their violations of §§ 110(b), (c), (f), (h), (i) and (j):

| Violation | Vincent Gould/ WTP Nashville | WTP USA |
|---|---|---|
| Section 110(b)(1) & (c)(1) | No Fine | $4,000 for eight separate violations (fined at maximum $500 per violation) |
| Section 110(f)(1) | $3,500 for seven separate violations (fined at maximum of $500 per violation) | $3,500 for seven separate violations (fined at maximum of $500 per violation) |
| Section 110(g)(1) | No Fine | No Fine |
| Section 110(h) | Disgorge and Turnover all but $30 of fee as excessive | Disgorge and Turnover all but $30 of fee as excessive |
| Section 110(i) and (k) | Damages to be set by the United States District Court | Damages to be set by the United States District Court |
| Section 110(j) | Injunction to Issue as Set Forth Above | Injunction to Issue as Set Forth Above |

The court orders the immediate turnover of all fees paid by Ms. Inmon in excess of $30

to the trustee immediately pursuant to section 110(h)(2).[22] Finally, the court enjoins the *Inmon* defendants as stated herein.

This matter is CERTIFIED to the United States District Court for the Middle District of Tennessee for further § 110(i) matters. Under section 110(i), upon motion of the debtor, trustee or a creditor, the district court shall order the payment of damages following a hearing.

## V. Conclusions for All Matters

The court will issue an Order not inconsistent with the findings herein simultaneously with this Memorandum Opinion.

It is therefore so ORDERED.
This ___ day of October, 2004          **/s/ George C. Paine, II**

George C. Paine, II
Chief Judge
United States Bankruptcy Court

---

[22]Section 110(h)(2) orders the funds be turned over to the trustee. However, that statutory provision also allows the debtors to exempt such funds. Subsection (3) allows the debtor, trustee, or creditor to file a motion for an order under subsection (2). Following such order, subsection (4) allows the court to fine up to $500 for failure to comply with the court's turnover order within thirty days of service of such order.